Reserved decision, but we'll get you get you a decision on this motion very quickly, so The first case on our regular argument calendar is Hoffer versus Eastwood Mr. Miller, good morning. Good morning. May it please the court? Let me ask you first is that we can stop the clock for a second is that podium at a comfortable level for you? Yeah. Okay, it does go up, I think. And down. Thank you. And down. Yes. Thank you. Appreciate that. I'm Howard Miller from Bond, Chenick and King on behalf of Dr. Eastwood. This case has been going on against Dr. Eastwood for eight years, despite the fact that there is a videotape of the board meeting in question that shows that Dr. Eastwood did absolutely nothing wrong in this case. He did took no action whatsoever to deprive Mr. Hoffer of his What happened is that Mr. Hoffer came to the board. I think my concern starts before this argument, and that is whether you have standing. I mean, did the did the district court I thought the district court went out of its way to say that it was not deciding the issue of qualified immunity. And then it went ahead and did anyway. Well, it talked about it, but I'm not sure it ever decided. It held it actually said it was not entitled to qualified immunity. And we cited papers in our brief that even if the court had refused to rule on qualified immunity, that itself is appealable. That is well, except except this was a pleading problem here. That is to say the the as I understand it, that you did not include qualified immunity in your original presentation to the court. And then you asked the court to then give you permission to do it again and said, Yeah, we'll give you permission, but only with respect to something other than qualified immunity. But you put qualified immunity in there anyhow. And he said, I'm not going to hear it. So what happened was there was prior counsel who moved for summary judgment on the Fourth Amendment claim, but did not move for summary judgment as well on the First Amendment claim, particularly representing Dr. Eastwood, the defendant. The case then settled. Mr. Hofer got all the amount. Dr. Eastwood wouldn't sign the settlement agreement. The case went forward. We asked to file summary judgment. The judge denied it. But then the judge dismissed the case for lack of bringing it on the calendar fast enough. That was appealed to this court. This court reversed. We came back. In the meantime, there was a decision from the State court on the defamation claim. We then said, Okay, let us move for summary judgment now. The lower courts. And the defamation with respect to the defendant. Which ties into qualified immunity, because it would be, was it clearly established that when someone's going to come and read a statement that is defamatory at a public school board meeting, is that constitutionally protected? Within that is the personal involvement. Now, the judge said, I'm not letting you brief personal involvement of Dr. Eastwood, even though it's clear from the videotape that he didn't do anything wrong. We would say that that's an appealable order in and of itself, because it, as, as. I thought that only one of the statements was regarded as defamatory in the New York State. That's correct. The rest were not. Well, knowingly false. Knowingly false. They were false, but not within the constitutional sense of false. But one was knowingly false. That's correct. The statement about Dr. Eastwood's daughter. Daughter's statement. Yes. But the rest was not defamatory. The rest was not defamatory. That's correct. But I would, but again, under this Court's precedence, if we were denied the right to, to brief qualified immunity, that would be appealable. But, but help me understand the record, and I'm going to tell you how I understand it, and then please correct me, Mr. Miller. The, the district court limited what it was that you could argue on summary judgment. Yes. And not, this is where it's going to get nice. Notwithstanding that, you added in some other things, but you did not add in the qualified immunity claim. We did add qualified immunity. We briefed qualified immunity to the lower, to the district court. But they, but the district court didn't hear it because the district court didn't give you permission to allow that amendment. And again, whether, he's, on one hand the district court said, well, I didn't give you permission to allow that amendment. And on the other hand, the district court went ahead to decide, you're not entitled to qualified immunity. Well, there is a, there is a difference between holding and dicta, and it's certainly argument, arguable that that was dicta and not holding, and that's the question. It seemed to be holding, and again, even if it was just dicta, then again, the cases we cited in our brief, the refusal to even rule on that would be appealable. And I would submit to you, and think about what qualified immunity is designed to stop an official from having to stand trial unnecessarily. Here we have a videotape of a board meeting showing a superintendent of schools doing nothing, and yet he's being sued. I thought it showed, I haven't seen it, I admit it may be right in front of me, I haven't seen it, but I thought there was something about your client having slid a note of some sort over to. So what it shows is, and this is not disputed, shows that Mr. Hofer steps to the microphone. The board president, Mr. Geiger, says this is only for residents here. Then it shows Dr. Eastwood taking one piece of paper, a single sheet of paper, passing it to his left. Sometime later, an entire pad comes from someone else who passes it to Eastwood. It's not the same note. And there's no evidence of what that, in the record of what that note says. Then it gets handed to Geiger. But Geiger had already made the decision. Sotomayor. Is this something we should be deciding now? Yeah, because it shows that personal involvement is part of qualified immunity. Then, even if the note had come from Eastwood, which it didn't, but even if it did, and the note said, Plead exclude Hofer. Under this Court's precedent in X-Men and Velez v. Levy, Dr. Eastwood can't be liable for that. He can't be, he cannot be liable for that. Under those Courts' clear holdings, under 2508 of the Education Law, he's a non-voting member of the board. He has no authority to stop someone from speaking at a public board meeting. And he didn't stop someone from speaking at a public board meeting. Is there any secret of the Hofer-Eastwood hostility? Yes. Mr. Geiger testified in his deposition that he didn't know who Hofer was when he showed up and when he stood at the microphone. How would he know he's not a resident of Middletown then? Because Hofer said, the first words out of Hofer's mouth was that I'm from the Oswego School Board. So I would urge the Court to look at the tape and ask why we're here. I mean, why are we here? He doesn't do anything. He literally stays silent. And, again, even if passing someone's note, Elsa's note, to Geiger, and Geiger said the note wasn't about Hofer, and Hofer says I don't know what was on the note, how is that a constitutional violation against Mr. Hofer? And then, again, even if we were to speculate that somehow Eastwood telepathically told Geiger not to allow him to speak, again, Eastwood had no authority to do anything. And then the statement Hofer was going to read anyway, under all the authorities we cited in our brief, would not itself be constitutionally protected. Because Hofer said, here's the statement I want to read. The appellate division and the lower court and the State court said that was designed just to be a personal attack on Dr. Eastwood. It had nothing to do with what was on the agenda for the school board evening that night. So, again, it's not protected because you don't. Again, the cases I cite in the brief say that a municipal body can limit public comment to what's on the agenda. Doesn't it have to have a policy to that effect? It does not have to have a policy to that effect. So an ad hoc decision can be made just to exclude somebody who's a private citizen who wants to address the board in a portion of the meeting where the agenda, writ large, usually has a time for the public to comment. And the public, and their policy does say, to the agenda. You are allowed to make comments about the agenda. And his comments plainly were not going to be about the agenda. They were just a personal attack on Dr. Eastwood. Let's hear from Mr. Sussman, who I'm sure will have a rebuttal to what you just said, and then you've reserved three minutes, Mr. Miller, for rebuttal. May it please the Court, Michael Sussman representing Mr. Hofer. It's kind of hard to know where to begin, but let me begin here. The only appellate issue, as I understand this Court's jurisprudence, is qualified immunity. As Judge Sachs pointed out correctly, the district court made a determination in finally granting the leave to file a motion for summary judgment that that motion was predicated on a, quote, change of circumstance. The change of circumstances argued by Mr. Miller's firm was that there had been a determination by the Second Department, ultimately, that one of the four statements that was challenged was defamatory. So when they came to the district court, they said that because it turned out later that one of the statements was defamatory, that deprived Mr. Hofer of the right in a limited public forum during a public comment period to make a statement. The district court said he would hear briefing on that specific subject and heard briefing on that specific subject. There was no discussion in the district court at that time of, quote, qualified immunity or anything else. They briefed that issue and extended the briefing, as the Court's pointed out, into a number of different issues. The district court considered primarily the issue that he, Judge Ramos, had indicated could be heard based on a change of circumstance, which was whether Mr. Hofer could have been prohibited from speaking, which essentially represented a prior restraint, based on what later was found out regarding his speech. And the district court determined under the precedents, which were cited in his opinion correctly, in my view, that he could not be so prevented. Sotomayor. Was the argument made at that time, just help me with the record, by Dr. Eastwood, that he was entitled to qualified immunity? No. It was not. So basically ---- It says in Judge Ramos's decision, Eastwood's argument that he is protected by qualified immunity is also outside of the permitted scope of what we're doing here, but then he goes on to resolve it. I agree. Why would he say that if he wouldn't contemplate it? I thought the question by Judge ---- maybe I misunderstood your question, Your Honor. My question was, was it argued? Was it argued to the district court ultimately? Yes. Well, at that time. No. In other words, when we all were together ---- Right. I thought that's what you were referring to. No, I am. It was not raised in that context, and I don't recall it being raised at all. The district court ---- Go ahead. The district court delimited the motion, the second summary judgment motion, carefully to the issue which the district court indicated represented a change in circumstance, which was their claim ---- Which was the decision of the appellate division. Right. Their claim that, quote, defamatory speech did not have constitutional protection. That was the issue discussed, Judge Droney. But to Judge Droney's ---- or to follow up on Judge Droney's question, how did Judge Ramos get to comment on qualified immunity?  How did he finally reach a decision on what had been argued? Because contrary to the scope of the permitted motion, the appellant, Dr. Eastwood, made arguments about qualified immunity in his motion papers. Okay. That's the answer to your question. And as Judge Ramos indicates in his opinion, that was beyond the scope of what was permitted on the motion, but since it was there, there were several issues beyond the scope. That's not the only issue they raised beyond the scope. No, no. I know that. So he, with regard to all those issues, opined, if you will, that even if it were to apply, and he explained that this is a limited public forum. You cannot have viewpoint discrimination in a limited public forum. You could have general content discrimination, if you will. And he distinguished the two correctly, and he applied that distinction. Now, here today, Mr. Miller is arguing what amounts to the summary judgment motion that was not before the district court as to whether his client had, quote, unquote, personal involvement. The district court has already resolved that issue to this extent. It's found there to be an open question as to whether he's had personal involvement. He's the person who had the motive to shut this gentleman up. He's the person who passed the note. The district court indicated that raised a question of fact as to why this gentleman  And that's where we stand. So my position is very simple. Qualified immunity does not apply, as this Court knows, except on undisputed facts, undisputed facts, which facts are conceded by the defendant for purposes of the argument before this Court, and if those facts would allow a determination as a matter of law, which they would not. Please. I'm going to ask you two probably irrelevant questions. First, what happened with the defamation judgment? Was the judgment ultimately of? There was an agreement made before the appeal was taken on the defamation that a sum certain would be paid to Dr. Eastwood if any of the allegations of defamation were upheld. That sum certain was deposited in my escrow account, and when the Second Department issued its ruling, that sum was transmitted to Mr. Greenwald, who was then Mr. Hofer's attorney in the State proceeding, and it was paid to him. Okay. Now, the second question is there's talk about the settlement, which the defendant ultimately refused to join it. Right. Did that ever go into effect? Yes. Did that ever become effective? Yes. As Mr. Miller correctly indicates, what happened with the settlement was in the spring of 2013, all parties, including Hofer indicated and Eastwood, indicated agreement to a settlement. It came time to sign the settlement papers. Dr. Eastwood repudiated the settlement. That wasn't exactly made known to us in a timely way, but it finally became known to us. When he repudiated that and it became clear that he would not sign it, I was trying frankly to get him to sign it. He wouldn't sign it. We went back to the district court, and that's the subject of the prior order of this court. Judge Ramos ultimately, in May of the next year, said we weren't timely in trying to reinstitute the case, and this Court reversed that specific order, which is what brought us back to Judge Ramos on the merits. But yes, the answer to your question is the settlement was effectuated, except as to this gentleman. But it was. It was. Something was. So everybody else is out. It's settled as to everybody but this defendant. The other matter that you, since you're asking about the procedure, which obviously should be aware of, there is this Fourth Amendment issue with regard to Hofer and Eastwood. My client was arrested. He was taken into custody. We believe the evidence is very clear that he was taken into custody by dint of the direction and order of Dr. Eastwood. The district court found originally on his first substantive decision in this case that he, Eastwood, was insulated from immunity for that. He didn't see facts that showed that. We have never appealed that because we've never had a final order, and we don't have the option of appealing it before we have a final order. So, frankly, all of Eastwood's, to me, all of Eastwood's behavior is on the table. Not that that is important to you, but I just want you to understand where we are procedurally. That issue has never been before this Court, because it couldn't have been before this Court. There was no place to bring it before this Court. Sotomayor, as you read the record, Mr. Sussman, let me just ask you, in connection with what the, what Dr. Eastwood argued by way of qualified immunity, did he, did the argument of lack of personal participation get made before the district court? No. I mean, if it, let me put it this way, I don't believe it got made, but if it got made, the district court said it was, there were disputed issues of fact as to it, and it could not be resolved as a matter of law in his favor. The district court took the position that there was evidence of Eastwood's animosity, involvement, no one else had any motive to proceed against Hofer. There was no restriction on public speech by non-residents in the policy, as one of your Honors pointed out earlier. Mr. Hofer was invited back, allegedly, by the school board president after this to address the board. The district court found no policy which prohibited Hofer's speech. And he felt that there was a legitimate fact issue, and I think he's right, as to whether Hofer was restricted by dint of this hostility, which was the only known hostility. There was no non-resident or anything else. So that's where we stand. I hope that answers your question, Judge Roehl. Yes, it does. So are you seeking that we dismiss or affirm? Yes. I mean, we would dismiss if there's a genuine disputed material of fact about the circumstances leading to qualified immunity.  Which means that it could still be raised at trial. Or do we affirm on that, since qualified immunity wasn't really reached here, it's just any other kind of appeal of a summary judgment denial? Well, I think I hear you, and I think procedurally in terms of what this question of prudence is, that the matter should be dismissed. The appeal should be dismissed. The appeal should be dismissed. When I say the matter, I mean the appeal. Yes, thank you. And I think that follows from the fact that qualified immunity does not obtain — in other words, the appeal really is about things other than qualified immunity and the Court has no jurisdiction. That's the simplest way to put it. Because the plaintiff, therefore, has no standing. Defendant or appellant. Yes. I think that's right. Yes. Procedurally, under your jurisprudence. Now, whether that leads us back to somebody entertaining qualified immunity later, I'm not frankly concerned about that, because I think it's very clear that when the actions are all displayed, there's not going to be qualified immunity. There's going to be a plain contravention of constitutional rights. And those two conjoin. Thank you. Thank you. Mr. Miller. Thank you. Again, the issue of qualified immunity was fully briefed to the district court. Including lack of participation? He would not allow us to brief participation, which, again, we would argue under your precedence that that itself is a denial of qualified immunity that is immediately appealable. But you appealed other things that you weren't allowed. We appealed the qualified immunity. We appealed qualified immunity. Of course, that's the only way you can appeal. Which is the only way we get jurisdiction, which, again, I think. Sorry. I misspoke in what I was trying to pose as a question by way of a statement, which is sometimes how I do it. But in the second go-round where you were allowed to come back and present a new argument based on the appellate division determination, not only did you argue what the district court specifically said you could argue, but you added additional arguments. We added qualified immunity. But the judge specifically said you cannot say that Dr. Eastwood didn't do anything which, again, is very puzzling because there's a videotape, which I implore you to watch, that shows he didn't do anything. There's no... He could have done something before. He could have said, geez, there's a guy out there and he's from Oswego. Watch out for him. But there's no evidence in the record that happened. There's not one iota of evidence in the record that happened. And Geiger specifically said he didn't say that to me. Well, the question is whether it's premature for us to address that. Again, because it's qualified immunity, I don't think it's premature. And, again, even if Dr. Eastwood did say that, let's say we could speculate that Dr. Eastwood grabbed Geiger. X-Men and Levy are binding. And those two cases make it clear he can't be liable based on the doctrine of qualified immunity. Assuming qualified immunity is before us. Assuming qualified immunity is before you. And, again, Second Circuit precedent says the denial of the ability to raise qualified immunity is the denial of qualified immunity. It's just feelable. He did have the ability to raise it. He just raised it too late. He could have raised it the first time. And, again, then counsel didn't. But when we came back and we had new information from the second department decision and we asked to raise it, and, again, I would submit to you that Judge Ramos did decide it. He didn't just say, well, you know, I'm not going to. He actually wrote on it. So if he wrote on it, came to a resolution that you're not entitled to it, that should be appealable now. I fear we do that all the time. But often in a footnote said if it was before us, we would. And then. Isn't it true that there was another board member, Morrow, who testified that he invited Hofer to speak that night? He did. There's no secret. He just didn't show up. No. Well, Morrow was an enemy of Mr. Geiger and Dr. Eastwood. He invited Hofer to show up but didn't tell anyone else. He didn't tell anyone. So, and it was, again, on the tape, it's Geiger who says you can't stop. You have to stop talking. It is solely Geiger. And Geiger testified without any contradiction he didn't know who Hofer was. Thank you, Mr. Miller. Thank you both. We'll reserve decision. Thank you. United States versus Chibol. Thank you. Good morning, Your Honors. May it please the Court. My name is Zachary Margolisonema along with Adam Malewa. I represent the appellant, Adam Ojibwa, in this case. There's three issues in our briefs, each of which is complex. So I welcome your guidance on where to pay attention. The first is, was Mr. Ojibwa afforded a fair trial?